1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS EDWARD DESKINS,

Plaintiff,

v.

CITY OF BREMERTON, a Washington
State Municipal Corporation; KENT
MAYFIELD, in his capacity as a police
officer for the City of Bremerton, CHARLES
BATES, in his capacity as a police officer for
the City of Bremerton, and as an individual;
and KRISTA HEDSTROM, a Washington
State Trooper, as an individual,

Defendants.

Case No. C08-05127-RBL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT.

This matter is before the court on Plaintiff's Motions for Partial Summary Judgment [Dkt. # 38,

40, 43], and Defendants' Motions for Summary Judgment [Dkt. # 33, 34].  The Court has carefully

considered these motions, their supporting declarations, and exhibits.  For the reasons explained herein,

Defendants' Motions for Summary Judgment are GRANTED IN PART and DENIED IN PART, and

Plaintiff's Motions for Partial Summary Judgment are DENIED.

## BACKGROUND

On January 3, 2006, Washington State Trooper Krista Hedstrom pulled plaintiff Thomas Deskins over for a routine traffic stop. Shortly thereafter, Trooper Hedstrom called for back-up and the responding officers ultimately deployed a Taser against Plaintiff before handcuffing him. Following the incident, Plaintiff filed a 42 U.S.C. § 1983 complaint against the following defendants: Washington State Trooper Krista Hedstrom in her individual capacity; City of Bremerton Police Officers Kent Mayfield and Charles Bates in their official and individual capacities; and the City of Bremerton itself. His complaint alleges that he was entitled to relief on the grounds: (1) that he was arrested without probable cause in violation of the Fourth Amendment; (2) the officers used excessive force against him in violation of the Fourth Amendment; (3) that the City of Bremerton had policies, practices and customs in place using unreasonable force; (4) that he was assaulted and battered; and (5) that he was falsely arrested and imprisoned.

Plaintiff seeks partial summary judgment on the issues of excessive force and lack of reasonable suspicion for the traffic stop, as well as lack of probable cause for the arrest. He also contends that collateral estoppel applies to the issue of whether the arrest was invalid. [Dkt. #s 38, 40, 43].

Defendants Hedstrom, Mayfield, and Bates also seek summary judgment on their qualified immunity defense. [Dkt. # 33, 34]. The City of Bremerton also seeks summary dismissal on all of Plaintiff's claims against it, arguing there is no evidence that a city policy, custom, or practice violated Plaintiff's constitutional rights. [Dkt. # 34]. Plaintiff has withdrawn his claims against the City [Dkt. # 63 at 36].

# FACTS

The following facts are largely set forth in declarations and deposition testimony by the defendants and are undisputed by the plaintiff:[1]

On January 3, 2006, Plaintiff Thomas Deskins was driving to work to begin a 5 am shift.   [Dkt. # 52 Ex A Dep. of Deskins at 7].  During his commute, Washington State Trooper Krista Hedstrom began following Mr. Deskins, who was driving in the left lane of SR-3, a two-lane highway.  [Dkt. 52 Ex B Hedstrom Dep. at 7].  Trooper Hedstrom followed Mr. Deskins for some distance, and noticed him weaving back and forth in his lane. [Dkt. # 33 Attach. 2 Hedstrom Decl. ¶ 3; Dkt. # 35 at 22 Hedstrom]. The speed limit on the highway was 60 miles per hour, and Mr. Deskins was traveling at approximately 50 miles per hour. [Dkt. # 33 Hedstrom Decl. Att. 2 at 2].  There was no appreciable traffic at the time. [Dkt. # 33 Att. 1 Deskins Dep. at 12;  Dkt. # 52 Hedstrom Dep. Ex B at 6-7].

After following Mr. Deskins for several miles, Trooper Hedstrom activated her lights.  [Dkt. # 33 Hedstrom Decl. Attach. 2 at 2].  Trooper Hedstrom followed him for another mile and then activated her siren.  [Dkt. # 33 Hedstrom Decl. At 2].  She informed the radio communication system that the anticipated location of the traffic stop was Kitsap Way. [Dkt. # 35 Hedstrom Rep. At 22].  Mr. Deskins claims that he became aware that he was being signaled to pull over at Kitsap Way. [Dkt. # 33 Deskins Dep. Attach. 1 at 5].   Mr. Deskins, however, drove past Kitsap Way, and continued on past several safe areas to stop. [Dkt. # 35 Hedstrom Rep. At 22].  Trooper Hedstrom informed the system that the vehicle was "failing to yield." [Dkt. # 35 Hedstrom Rep. At 22].  Mr. Deskins continued on and exited at Austin Drive [Dkt. # 33 Hedstrom Decl. Att. 2 at 2].  Kitsap Way is at milepost 38.31, and Austin Drive is at

---

[1]It is notable that Plaintiff did not, in his motions for partial summary judgment nor in his replies to Defendants' motions, attach any declarations controverting the officers' accounts.  His own motion is supported by various exhibits and excerpts of deposition testimony.  However, he includes only five pages of his own deposition testimony, which is dedicated entirely to introductory information, *e.g.*, where Plaintiff worked, his position, his customary bedtime, what he ate for dinner the evening before, and what time he woke up that morning and left for work.  Then, the deposition selection abruptly ends. [Dkt. # 52 Att. 1]. This means that Plaintiff does not directly controvert Defendants' version of events. Each of the Defendants' versions largely corroborate the others'. Defendants supply  their own heavily excerpted selections from Plaintiff's deposition, which (unsurprisingly) do not dispute the officers' contentions.

milepost 39.32–a distance of just over one mile. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 2]. Mr. Deskins pulled to a stop at the top of the off-ramp, and Trooper Hedstrom parked her vehicle behind him. [Dkt. # 33 Hedstrom Decl. Att. 2 at 2].

As she exited her vehicle, Trooper Hedstrom noticed Mr. Deskins' driver's side door was open. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 3; Dkt. # 35 Hedstrom Rep. At 22]. She verbally ordered him to remain inside his vehicle.[2] Shortly thereafter, Trooper Hedstrom alleges that Mr. Deskins exited his vehicle, stumbled, and nearly fell before being caught by his open door. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 3; Dkt. # 35 Hedstrom Rep. at 22]. Mr. Deskins does not offer any evidence to dispute this contention, but Trooper Hedstrom's attorney in his briefing noted that "Mr. Deskins admitted that he probably slipped on some oil, upon exiting his car" in his deposition. [Dkt. # 71 at 8n.3]. The relevant deposition testimony is not attached, and is therefore not in evidence.

Trooper Hedstrom called for back-up units. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 3]. Mr. Deskins faced the police vehicle and Trooper Hedstrom ordered him back into his vehicle, which Deskins alleges is the first thing he heard Trooper Hedstrom say to him [Dkt. # 33 Deskins Dep. Attach. 1 at 7]. Plaintiff complied. [Dkt. # 33 Deskins Dep. Attach. 1 at 8; Dkt. # 52 Hedstrom Dep. Ex. B at 13].[3] During this interaction, Trooper Hedstrom pulled her gun out and pointed it in Plaintiff's direction while keeping her finger along the weapon outside the trigger area. [Dkt. # 49 Hedstrom Dep. Attach. 1 at 4,9]. Trooper Hedstrom claims that she feared for her safety in part because Mr. Deskins was larger than she was (he

---

[2]Mr. Deskins does not dispute that Trooper Hedstrom said these words to him, but in his response to Trooper Hedstrom's motion for summary judgment noted that there was no evidence that he had heard these orders. [Dkt. # 51 at 29], a possibility bolstered by deposition testimony in which Mr. Deskins alluded to his previous poor hearing from working in a shipyard but said "I think it's improved." [Dkt. 33 Attach. 1 at 9].

[3]There is an issue of fact as to whether or not Trooper Hedstrom told him to raise his hands in the air. Trooper Hedstrom asserts that after Mr. Deskins exited and she told him to get back in his car, he delayed, and she told him to raise his hands, after which he entered the car. [Dkt. # 52 Hedstrom Dep. Ex. B at 13]. Mr. Deskins's deposition does not reflect that she told him to raise his hands. [Dkt. 33 Deskins Dep. Attach. 1 at 8]. Because whether or not he did or did not raise his hands in response to an order that may or may not have been given or heard does not affect the outcome, it is not a "genuine issue of material fact" and summary judgment is still appropriate. *See United States v. First Nat. Bank of Circle*, 652 F.2d 882, 887 (9th Cir. 1981) ("[a]n issue of fact affecting the outcome of the litigation requires a trial to resolve the parties' differing versions of the truth.").

appeared to be 6'2" tall and 180 pounds, while she is 5'4" tall and weighs 140 pounds), it was dark, she did not know who he was or whether he was armed, he had exited his vehicle, she thought he might be impaired, she was alone with him, and there was little or no traffic.  [Dkt. # 33 Hedstrom Decl. Attach. 2 at 3].

After Mr. Deskins re-entered his vehicle, she ordered him to put his hands on the ceiling.  [Dkt. # 33 Hedstrom Decl. Attach. 2 at 3; Dkt. # 35 Hedstrom Rep. At 22].   Mr. Deskins placed his left arm on the window ledge and his right arm on the back of the seat.  [Dkt. # 33 Attach. 2 at 3].  After Trooper Hedstrom instructed him several times to put his hands on the ceiling, he put his hands down and it appeared to Trooper Hedstrom that he was reaching for something.  [Dkt. # 33 Attach. 2 at 3].  The car window was at least slightly open.  [Dkt. # 33 Attach. 1 at 8].  Mr. Deskins does not refute Trooper Hedstrom's version of these facts but notes that there is no evidence that Mr. Deskins heard these orders [Dkt. # 51 at 29].[4],

Defendant Officers Bates and Mayfield heard Trooper Hedstrom's call for back-up and arrived at the scene in separate vehicles within a minute or two of Mr. Deskins returning to his vehicle.  [Dkt. # 57 at 5, Dkt. 36 at 3]. When they arrived, Mr. Deskins's left arm was hanging out the window, and it appeared to them that Mr. Deskins was using his right hand to either hide or grab something in the vehicle's interior.  [Dkt. # 36 Bates Decl. at 3; Dkt. # 37 Mayfield Decl. at 4].  Mr. Deskins admits he could hear the other officers screaming and yelling but claims he could not initially make out what they were saying.  [Dkt. # 33 Deskins Dep. Attach. 1 at 8-9].  Officer Bates pointed his gun at Mr. Deskins and Officer Mayfield pointed his Taser at Mr. Deskins.  Mr. Deskins could not see the officers because the spotlights were too bright.  [Dkt. # 33 Deskins Dep. Attach. 1 at 8-9].  At some point, Officer Bates took over verbal commands and ordered Mr. Deskins to raise his hands into view.

_____

[4] This  possibility is bolstered by deposition testimony in which Mr. Deskins alluded to his previous poor hearing from working in a shipyard but said "I think it's improved." [Dkt. 33 Attach. 1 at 9].

According to Officer Bates, Mr. Deskins exited his car in response to commands and turned away from the officers after a delay and several commands. [Dkt. # 36 Bates Decl. at 3]. According to Officer Bates, it took several commands for Mr. Deskins to raise his hands. [Dkt. # 36 Bates Decl. at 3]. Officer Bates ordered Mr. Deskins to raise his jacket and he did so. As Mr. Deskins raised his jacket, Officer Mayfield discharged his Taser, hitting Mr. Deskins with the wires. [Dkt. # 33 Attach. 2 at 4; Dkt. # 36 Bates Decl. at 3]. Mr. Deskins fell to the ground on his stomach. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 4].

The defendants dispute the following facts relating to Mr. Deskins's behavior immediately before he was tased:

There is an issue of material fact as to whether Mr. Deskins turned at the same time he raised his jacket. Officer Bates and Officer Mayfield both wrote in their reports that they saw him turn towards Officer Bates rapidly. [Dkt. # 36 Bates Decl. at 3; Dkt.# 37 Mayfield Decl. at 4]. In his deposition, Officer Mayfield alleged that Mr. Deskins turned to the right. [Dkt. # 52 Mayfield Dep. Ex. D at 30]. In contrast, Officer Bates claimed in his deposition testimony that Mr. Deskins turned to the left. [Dkt. # 52 Bates Dep. Ex. C. at 12]. Trooper Hedstrom did not see Mr. Deskins turn at all. [Dkt. # 52 Ex B at 28]. Mr. Deskins does not dispute any of these accounts and does not assert by declaration or otherwise that he did not turn.

Officer Mayfield approached Mr. Deskins while he lay on the ground in the prone position with his hands beneath his body, and ordered Mr. Deskins to show his hands. Mr. Deskins did not immediately comply. Officer Mayfield contends that approximately one second later he deployed his Taser a second time directly into Mr. Deskin's back. [Dkt. # 52 Mayfield Dep. Ex. D. at 15-16]. At this point, the officers did not know if Mr. Deskins had a weapon, and Officer Mayfield's report reflects that he was concerned that Mr. Deskins could push himself up or use a weapon. [Dkt. # 37 Mayfield Decl. at 5]. After having been tased, Mr. Deskins immediately showed his hands. [Decl. # 37 Mayfield Decl. At 5]. Officer Bates

handcuffed Mr. Deskins and escorted him to Trooper Hedstrom's vehicle. [Dkt. # 36 Decl. Bates at 3]. Officer Bates testified in his deposition that he handcuffed Mr. Deskins for the sole reason of officer safety, [Dkt. # 52 Bates Dep. Ex. C at 19], and that he escorted him to Trooper Hedstrom's car so she could finish her investigation [Dkt. # 35 Bates Dep. At 39]. A search of the vehicle uncovered no evidence. [Dkt. # 35 Hedstrom Rep. At 22]. Trooper Hedstrom returned to her patrol car and advised Mr. Deskins of his rights. [*Id.*].

Mr. Deskins admitted in his deposition that at the time of his arrest his eyes were puffed and swollen, and he could barely open them, a condition he attributed to having been tased. [Dkt. # 33 Deskins Dep. Attach. 1 at 11]. Trooper Hedstrom did not detect any odor of intoxicants, and the officers did not find evidence in Mr. Deskins's vehicle. [Dkt. # 35 at 22]. Mr. Deskins was booked into jail for Driving under the Influence and Obstruction. He refused to take a blood test that would detect the presence of intoxicants. While Trooper Hedstrom was completing paperwork at the jail, Mr. Deskins laid face down in his cell on the concrete pavement. [Dkt. # 35 Hedstrom Rep. at 23].

## DISCUSSION

**Summary Judgment Standard**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other

words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220. In deciding whether summary judgment is appropriate, the court resolves ambiguities and draws all permissible factual inferences against the moving party. *See Anderson*, 477 U.S. at 255.

## I. Defendants' Motions for Summary Judgment- Qualified Immunity

All of the remaining defendants assert the defense of qualified immunity.[5] The doctrine of qualified immunity shields executive officers from civil suit for conduct that "does not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is available when the facts, taken in the light most favorable to the party asserting the injury, show either that the officer's conduct did not violate a constitutional right, or that a reasonable officer could think his conduct was lawful in the situation. *Saucier v. Katz*, 533 U.S. 194, 201, 202 (2001).

Qualified immunity shields law enforcement officers from liability for conduct that in fact violates a constitutional right, so long as a reasonable officer could think the conduct lawful: "qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. at 206). "If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198. In determining whether a right is clearly established, the level of abstraction at which the right is stated must be particularized to the case, and not as a broad proposition: "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier,* 533 U.S. at 202.

---

[5]Defendant City of Bremerton's Motion for Summary Judgment is granted since plaintiff has withdrawn his claim against the City.

**A.   Trooper Hedstrom is Entitled to Qualified Immunity.**

Trooper Hedstrom seeks summary dismissal of Plaintiff's claims on two grounds.  She alleges that she did not violate Mr. Deskins's rights as a matter of law, and that even if she did she is entitled to qualified immunity.  [Dkt. # 33].  Mr. Deskins contends that Trooper Hedstrom is not entitled to summary judgment because the initial traffic stop violated his Fourth Amendment rights, that Trooper Hedstrom used excessive force when she pointed her weapon at him, that she is vicariously liable for the tasing, and that she lacked probable cause to arrest him.

**1.   Hedstrom Had Probable Cause to Pull Over Mr. Deskins**.

Mr. Deskins asserts that Trooper Hedstrom violated his Fourth Amendment rights by initiating a traffic stop without probable cause.  [Dkt. # 51 at 18].   Trooper Hedstrom contends that she had reason to stop Mr. Deskins for violating the "Keep right" statute, RCW 46.61.100(2).   In general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Whren v. U.S.*, 517 U.S. 806, 810 (1996).  Mr. Deskins claims that continuous driving in the left lane on a multilane highway does not amount to a traffic violation under this "Keep right" statute:

> Upon all roadways having two or more lanes for traffic moving in the same direction, all vehicles shall be driven in the right-hand lane then available for traffic, except (a) when overtaking and passing another vehicle proceeding in the same direction, (b) when traveling at a speed greater than the traffic flow, (c) when moving left to allow traffic to merge, or (d) when preparing for a left turn at an intersection, exit, or into a private road or driveway when such left turn is legally permitted.

The mandatory language "*shall* be driven in the right-hand lane," accompanied by four discrete exceptions—none of which the plaintiff claims apply to his situation—is fatal to the plaintiff's position. In response to the plain language of the statute, Mr. Deskins points to RCW 46.61.100(4): "It is a traffic infraction to drive continuously in the left lane of a multilane roadway when it impedes the flow of other traffic."  The gist of Mr. Deskins's argument is that subsection (4) modifies subsection (2), so that impeding the flow of traffic is a necessary predicate to violating the "Keep Right" statute.  Unsurprisingly,

the Washington courts have not authoritatively construed this portion of the "Keep right" statute, but the plain language of both provisions is sufficiently clear to dispose of Mr. Deskins's argument.

Subsection (4) simply says it is a traffic infraction to drive in the left lane "when" it impedes traffic flow; it does *not* say "only when." Further, as Trooper Hedstrom notes, a "traffic infraction" includes the performance or failure to perform any act prohibited by Title 46 RCW. RCW 46.63.020. The uncontroverted evidence shows that Mr. Deskins traveled in the left lane for several miles, in the absence of any appreciable traffic, and was not preparing for a left turn. Therefore, Trooper Hedstrom had probable cause to believe Mr. Deskins was violating the "Keep right" statute and therefore had probable cause to pull him over. Therefore, Trooper Hedstrom's motion for summary judgment on the issue of non-liability for the traffic stop is GRANTED, and plaintiff's claim on this issue is DISMISSED.

**2.      Trooper Hedstrom did not Use Excessive Force**.

Mr. Deskins opposes Trooper Hedstrom's motion for summary judgment, alleging that she used excessive force when she pointed her gun at him as he exited his vehicle. He also claims that the incident amounted to an arrest without probable cause the moment she drew her weapon. [Dkt. # 51 at 24].

An excessive force claim arising in the context of a traffic stop is "most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Fourth Amendment guarantees the right to be free from "unreasonable" seizures. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing interests at stake." *Id.* at 396 (internal citations omitted). This reasonableness must be judged from the perspective of a reasonable officer on the scene. *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-

second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Assessing whether force was excessive requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

In the context of a traffic stop, "a police officer may take reasonable measures to neutralize the risk of physical harm and to determine whether the person in question is armed... in this circuit it has been held that '[t]he use of force does not convert the [investigatory] stop into an arrest if it occurs under circumstances justifying fears of personal safety.'" *United States v. Alvarez*, 899 F.2d 833, (9th Cir. 1990) (quoting *United States v. Buffington*, 815 F.2d 1292, 1300 (9th Cir. 1987)) (internal citations omitted). "The use of force...does not convert the stop into an arrest if the force is justified by concern for the safety of the officer or others." *United States v. Harrington*, 923 F.2d 1371, 1371 n.1 (1991). *See United States v. Alvarez*, 899 F.2d 833, 838 (9th Cir. 1990) (ordering defendant to leave car at gunpoint); *United States v. Taylor*, 716 F.2d 701, 708-09 (9th Cir. 1983) (ordering defendant to leave car and to lie down in ditch at gunpoint and handcuffing defendant).

At the time Trooper Hedstrom pointed her gun at Mr. Deskins, she had followed him for a mile with her siren on. It was dark, the area was little-trafficked, and Trooper Hedstrom was alone. Mr. Deskins had behaved suspiciously: he had driven over a mile after being aware that Trooper Hedstrom was signaling for him to pull over, he took an exit off the highway instead of pulling over onto the highway shoulder, and then exited the vehicle without being ordered to do so. Also, he was larger than she was, and she did not know who he was or whether he was armed. Trooper Hedstrom contends that these circumstances made her fear for her safety. The totality of the circumstances made it objectively reasonable for Trooper Hedstrom to conclude that she was justified in pulling her weapon out for her own

safety while ordering Mr. Deskins to return to the vehicle so she could gain control over the situation. Because she behaved reasonably, Trooper Hedstrom's motion for summary judgment on the issue of the excessive force claim is GRANTED, and the plaintiff's claims against her on this issue are DISMISSED.[6]

**3.     Probable Cause to Arrest**.

Mr. Deskins also opposes Trooper Hedstrom's motion for summary judgment because he alleges that he was arrested without probable cause in violation of the Fourth Amendment.  Trooper Hedstrom asserts probable cause to arrest him on three separate grounds.  First, Mr. Deskins failed to stop for at least a mile after being signaled to do so, which she contends is a violation of RCW 46.61.022, which states that wilfully failing to stop when signaled by a law enforcement officer is a misdemeanor.  Also, Trooper Hedstrom alleges that plaintiff's behavior during the traffic stop gave rise to probable cause to arrest for Obstructing a Law Enforcement Officer under RCW 9A.76.020(1) and Driving under the Influence of Intoxicant under RCW 46.61.502.

Trooper Hedstrom seeks summary judgment on the grounds of qualified immunity,  asserting that she reasonably believed that probable cause was present to arrest Mr. Deskins for Driving under the Influence of Intoxicant under RCW 46.61.502 and for Obstructing a Law Enforcement Officer under RCW 9A.76.020(1).  [Dkt. # 33 at 16].  Probable cause exists if "the facts and circumstances within [the arresting officer's] knowledge and of which [s]he had reasonably trustworthy information would warrant a prudent man in believing a crime had been committed." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  "We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases these officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally

---

[6] Mr. Deskins does not seem to have been aware that the gun was drawn: in his deposition he noted that throughout the interaction he could not "see back there because it was so bright.  I mean, obviously they all had their lights on, spotlights, and it was just like, you know, I couldn't even look in the mirror, I mean it was that bright.  I didn't know what was going on back there." He also admitted that he could not see Trooper Hedstrom, and the first time he saw her was when she was seated next to him in the patrol car  {Dkt. # 33 Deskins Dep. Attach. 1 at 9, 10].

liable." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Trooper Hedstrom is entitled to qualified immunity for the arrest if she reasonably believed probable cause was present to arrest Mr. Deskins for driving under the influence. *See Saucier*, 533 U.S. at 203. The circumstances that suggested to Trooper Hedstrom that Mr. Deskins was driving while intoxicated included the more than one mile distance Mr. Deskins drove while she followed him with her siren activated, his stumbling upon exiting the vehicle, and his slowness in responding to commands. Even if these circumstances, in themselves, do not give rise to probable cause, they enabled Trooper Hedstrom to reasonably believe that probable cause was present, and she is therefore immunized from civil liability for the arrest.

Additionally, Trooper Hedstrom could have reasonably believed that probable cause was present to arrest Mr. Deskins for obstruction. Obstruction occurs when a person willfully hinders or delays "any law enforcement officer in the discharge of his or her official powers or duties." RCW 9A.76.020(1).

The circumstances that could lead a reasonable officer in Trooper Hedstrom's position to believe that Mr. Deskins had committed the crime of obstruction include the two mile distance he traveled after she first signaled for him to pull over. He admits he traveled one mile after she activated her siren. Additionally, he did not put his hands on the ceiling when she asked him to, and delayed in responding to officer commands. Trooper Hedstrom could reasonably believe that such dilatory responses were tactical and intended to hinder the officers in performing the traffic stop, and that the conduct rose to the level of obstruction under the statute. Even if her judgment was objectively incorrect, it was subjectively reasonable because it is not clearly established that such conduct does not constitute obstruction under Washington state law, and Trooper Hedstrom is therefore entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194.

Trooper Hedstrom's motion for summary judgment of non-liability for Mr. Deskins's arrest is GRANTED, and Mr. Deskins's claims against her arising out of his arrest are DISMISSED.

**4.      Trooper Hedstrom is Not Vicariously Liable for the Tasing of Mr. Deskins.**

Trooper Hedstrom seeks summary judgment on Mr. Deskins's claims against her arising from the tasing. Mr. Deskins asserts that Trooper Hedstrom is liable for Officer Mayfield's actions. He contends that officers are liable for the acts of other officers if they were in a position to prevent the injuries but failed to do so. [Dkt. # 51 at 38]. Trooper Hedstrom argues that she was not in a position to prevent the tasing. Trooper Hedstrom's position is persuasive: she did not know that Officer Mayfield possessed a Taser and there is no evidence supporting the conclusion that she knew a tasing was imminent; in fact, she claims it was the first time she had ever seen a Taser used. [Dkt. # 33 Hedstrom Decl. Attach. 2 at 4-5]. Mr. Deskins has not met his burden to show that she was personally involved in the alleged violation of his rights, which is a necessary element of a civil rights claim. *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1201 (2009) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, Trooper Hedstrom's Motion for Summary Judgment on the issue of nonliability for the tasing is GRANTED in favor of Trooper Hedstrom, and Mr. Deskins's claims on this issue are DISMISSED.

**5.      Trooper Hedstrom is Entitled to Immunity on Plaintiff's State Claims.**

Mr. Deskins raises state law assault and battery, false arrest and false imprisonment claims against Trooper Hedstrom. Trooper Hedstrom is entitled to state qualified immunity from intentional tort claims if she was "(1) carrying out a statutory duty, (2) according to the procedures dictated to him by statute and superiors, and (3) while acting reasonably." *Staats v. Brown*, 139 Wn.2d 757, 991 P.2d 615 (2000). Here, Trooper Hedstrom was on patrol. The evidence does not suggest she violated any required procedures, and the Court has determined she was acting reasonably with regards to her use of force and arrest of Mr. Deskins. She has therefore met the requirements for state qualified immunity from Mr. Deskins's state law tort claims. Trooper Hedstrom's motion for summary judgment on the state law claims is GRANTED, and Plaintiff's state law claims against Trooper Hedstrom are DISMISSED.

**B.     Officers Bates and Mayfield**

**1.     Pointing Weapons Did Not Constitute Excessive Force.**

Mr. Deskins asserts Fourth Amendment claims for excessive force against Officers Bates and Mayfield for pointing their weapons at him. [Dkt. # 63 at 21]. Officers Bates and Mayfield contend that their conduct was constitutionally permissible, and that even if it was not, they are entitled to qualified immunity. [Dkt. # 34].

The officers are entitled to qualified immunity if they reasonably believed that Mr. Deskins represented a threat to their safety. The officers knew that Mr. Deskins had failed to yield. Officer Bates heard the updated back-up request on emergency traffic [Dkt. # 36 Bates Decl. at 3]. When Officer Bates arrived he saw Trooper Hedstrom with her firearm pointed at Mr. Deskins, who was seated in his car and appearing to use his right arm to "hide or go for something in the seat to the right of him." [Dkt. # 36 Bates Decl. at 3]. When Officer Mayfield arrived, he knew that Mr. Deskins had exited the car and was not following Trooper Hedstrom's commands. [Dkt. # 37 Mayfield Decl. at 4].

Under these circumstances, the officers could reasonably believe that drawing their weapons was justified to protect officer safety and are entitled to qualified immunity. The officers' motion for summary judgment on this issue is GRANTED, and Plaintiff's excessive force claims arising out of the pointing of weapons are DISMISSED.

**2.     Officer Mayfield is Not Entitled to Qualified Immunity for the Claim Related to Tasing**.

Officer Mayfield asserts that he is entitled to qualified immunity on Mr. Deskins's claim that the tasing constituted excessive force. [Dkt. # 34 at 14]. Qualified immunity is unavailable if (1) on the facts as viewed in the light most favorable to the one asserting the injury, a constitutional right has been violated, and (2) it would be clear to a reasonable officer that the conduct he engaged in was unlawful. *See Saucier v. Katz*, 533 U.S. 194, 206-07 (2001).

Determining the reasonableness of force "requires careful attention to the facts and circumstances of each particular case" and is based on the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Viewing the facts in the light most favorable to Mr. Deskins, he was first tased while apparently unarmed and after obeying the command to lift his jacket. The second application of the Taser occurred while he was on the ground, one second after a command was given. Officer Mayfield believed that Mr. Deskins had failed to yield to a traffic stop, a minor crime. Mr. Deskins was not actively resisting arrest; at most, he was delayed in responding to commands. He did not verbally threaten the officers, and at no time did the officers see a weapon in his hands. Because he was tased after complying with a command, he did not pose an immediate threat to officer safety. The second tase occurred after Mr. Deskins was lying on the ground, surrounded by officers.

On these facts, the force used was excessive in violation of the Fourth Amendment. As a result, whether Officer Mayfield "may be held personally liable… turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Whether a right is "clearly established" depends on the specific contours of the case, and not on whether the right as a broad proposition is established. *Saucier v. Katz*, 533 U.S. at 201-02. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

As of January 2006, "the law [was] clearly established that officers cannot use intermediate force against an individual suspect who does not pose an immediate threat, even if the suspect is not fully complying with police commands." *Cabral v. County of Glenn*, 2008 WL 737037 at *5 (E.D. Cal. 2009)

(quoting *Kaady v. City of Sandy*, 2008 WL 5111101 at *19 (D. Or. 2008)). Here, under plaintiff's version of the facts, he did not pose an immediate threat to the officers because he was complying with the command to raise his jacket. Therefore, Officer Mayfield's motion to dismiss the excessive force claim for the tasing on the ground of qualified immunity is DENIED.

**3.     The Subsequent Arrest Did Not Violate Plaintiff's Fourth Amendment Rights.**

After being tased, Officer Bates placed Mr. Deskins into handcuffs and helped him into Trooper Hedstrom's patrol car. [Dkt. # 36 at 3]. Mr. Deskins asserts that this sequence constituted an arrest without probable cause in violation of the Fourth Amendment. [Dkt. # 63 at 19]. Officers Mayfield and Bates allege that they had probable cause to arrest Mr. Deskins for obstruction. In the alternative, they assert the defense of qualified immunity because they reasonably believed that they had probable cause to arrest for obstruction. [Dkt. # 34 at 9].

As an initial matter, it is uncertain when the arrest occurred. At some point before arriving at his cell, the plaintiff was undoubtedly arrested, but it is doubtful that Officer Bates's initial handcuffing of plaintiff was tantamount to arrest. Handcuffing can be reasonable in the context of a traffic stop where the officers reasonably believe such restraints are necessary for their safety. *See United States v. Taylor*, 716 F.2d 701, 708-09 (9th Cir. 1983) (ordering defendant to leave car and to lie down in ditch at gunpoint and handcuffing defendant). However, because the Court concludes that the officers could reasonably have believed that they had probable cause to arrest Mr. Deskins for obstruction, their actions are entitled to qualified immunity regardless of the exact inception of the arrest.

Under the Fourth Amendment, warrantless arrests are reasonable so long as the arrest is supported by probable cause to believe that a criminal offense has been committed. *See United States v. Watson*, 423 U.S. 411, 417-24 (1976). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).

Under RCW 9A.76.020(1), "a person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." The information Officers Bates and Mayfield had would allow them to reasonably believe that Mr. Deskins had willfully hindered or delayed Trooper Hedstrom in her official duties. First, they had heard over their radio communication system that Mr. Deskins had failed to yield when Trooper Hedstrom attempted a traffic stop, which gives rise to the inference that he deliberately continued driving despite the law enforcement signal to stop. Further, they saw Mr. Deskins appear to reach for something in his car. Finally, Mr. Deskins was slow to respond to their commands. Even if Mr. Deskins's slow responses do not actually amount to obstruction, there is no authoritative state case law that so proclaims. Law enforcement officers are entitled to qualified immunity for mistakes of law, fact, or mixed questions of law and fact when it is not "clearly established" that their conduct violates the law at the time the alleged misconduct took place. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009). Because Officers Bates and Mayfield could have reasonably believed that they had probable cause to arrest Mr. Deskins for obstruction, they are entitled to qualified immunity for their actions. The officers' motion on this issue is GRANTED, and plaintiff's Fourth Amendment claims arising out of his arrest are DISMISSED.

**4.      Some of Plaintiff's State Law Claims Survive a Qualified Immunity Defense.**

Officers Bates and Mayfield seek summary dismissal of Mr. Deskins's state law tort claims. Law enforcement officers acting reasonably in carrying out their duties pursuant to authorized procedures are entitled to qualified immunity under state law. *Staats v. Brown*, 139 Wn.2d 757, 991 P.2d 615 (2000). Officer Bates acted reasonably and is therefore entitled to qualified immunity on the state law tort claims of assault, battery, and false arrest. The motion is therefore GRANTED in favor of Officer Bates with respect to the state law claims against him, and plaintiffs claims are DISMISSED. Officer Mayfield is entitled to qualified immunity on the assault and false arrest claims, but not on the battery claim because

the facts, when viewed in the light most favorable to Mr. Deskins, show that Officer Mayfield did not act reasonably when he discharged his taser. The motion is therefore GRANTED IN PART and DENIED IN PART with respect to Officer Mayfield, and plaintiff's state law claims against Officer Mayfield for assault and false arrest are DISMISSED.

## II. Thomas Deskins's Motion for Summary Judgment

### A.      Collateral Estoppel Does Not Apply to the Superior Court Decision.

Mr. Deskins requests partial summary judgment of liability on the grounds that he was arrested when the officers pointed their weapons at him and that he was arrested without probable cause. [Dkt. # 43]. He alleges that the doctrine of collateral estoppel requires this result, relying exclusively on an order of the Kitsap County Superior Court, reversing a Department of Licensing suspension of Mr. Deskins's driver's license. [Dkt. # 43, 44]. Mr. Deskins asserts that the doctrine bars litigation of the issues allegedly decided: that the arrest occurred when the Officer Hedstrom pulled her gun and that there was no probable cause to arrest for driving under the influence. [Dkt. # 44]. He seeks summary judgment that this arrest therefore violated the Fourth Amendment. [Dkt. # 43].

In general, the doctrine of collateral estoppel precludes relitigating issues of fact or law that have already been decided after the party "against whom the doctrine is applied has had a full and fair opportunity to litigate his or her case." *Nielson v. Spanaway Gen. Med. Clinic*, 135 Wn.2d 255, 262, 956 P.2d 312 (1998). To determine whether collateral estoppel applies to state court decisions, federal courts look to state law and give preclusive effect whenever the courts of that state would do so. *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28 U.S.C. § 1738). In Washington, collateral estoppel applies to bar the same parties from litigating issues of ultimate fact that have already been decided by a final judgment. *State v. Vasquez*, 148 Wn.2d 303, 308, 59 P.3d 648, 649 (2002). The party asserting collateral estoppel must prove:

"(1) the issue decided in the prior adjudication is identical to the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the

party against whom [collateral estoppel] is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice."

*State v. Vasquez*, 148 Wn.2d at 308, 59 P.3d at 649 (citing *Thompson v. Dep't of Licensing*, 138 Wn.2d 783, 790, 982 P.2d 601 (1999).

As far as this Court can determine from the record, the Department of Licensing ("DOL") responded to Mr. Deskins's refusal to take a blood test while in custody by seeking to suspend his driver's license under RCW 46.20.308. The Department appears to have prevailed at the hearing, and Mr. Deskins appealed the decision to superior court. The court's order, in its entirety, reads:

> The court finds that there was [*sic*] not reasonable grounds for officer safety at the time the officer pulled the gun on him; thus the arrest occurred at that time. At time of arrest the court finds that there was not probable cause to believe that petitioner was driving under the influence of intoxicants. Therefore the court reverses the suspension.

[Dkt. # 52 Ex. F].

Here Mr. Deskins has met the second prong of the collateral estoppel issue, but has failed to prove the other three prongs, and therefore collateral estoppel does not apply.

**1.    The Issues are Not Identical.**

Mr. Deskins asserts that there is identity of issues because the issues of when he was arrested and whether probable cause existed are the very issues he is raising here. Mr. Deskins argues that this Court must therefore find that his arrest violated the Fourth Amendment. Mr. Deskins ignores several important points. First, the scope of the license suspension hearing and its appeal only dealt with the issue of driving under the influence, RCW 46.20.308(8), leaving the parties free to litigate the issue of whether or not Officer Hedstrom had probable cause to arrest on other grounds, and this Court has already determined that she did.

Second, differing burdens of proof may prevent the "same issues" from being relitigated. As the Washington Supreme Court has noted:

> "[Collateral estoppel does not prevent relitigation of an issue if the] *party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue*

> *in the initial action than in the subsequent action;* the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action ..."

*State v. Jones*, 110 Wn.2d 74, 79, 750 P.2d 620, 622 (1988) (quoting Restatement (Second) of Judgments § 28(4) (1982)). In a licensing proceeding, the state has the burden of proving that reasonable grounds to initiate a traffic stop and probable cause to arrest are present. *Clement v. State Dept. of Licensing*, 109 Wn. App. 371, 374-76, 35 P.3d 1171, 1173 (Wash. Ct. App. 2001). In Mr. Deskins's § 1983 claim, however, he bears the burden of persuasion. *See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 308 (2001). Furthermore, since Trooper Hedstrom has asserted the defense of qualified immunity, Mr. Deskins's burden is higher in this proceeding, because he must show not only that probable cause did not exist, but that a reasonable officer could not have believed that probable cause existed. *See Saucier v. Katz*, 533 U.S. 194, 201, 202 (2001).

There is therefore not an identity of issues that precludes litigating whether or not Trooper Hedstrom arrested Mr. Deskins without probable cause.

**2.      Prior Adjudication Resulted in Final Judgment on the Merits.**

Both parties correctly concede that the superior court judgment was a final judgment on the merits.

**3.      The Parties are Not Identical.**

Mr. Deskins contends that Trooper Hedstrom was a party, or in privity with a party, in the appeal of the DOL proceeding. However, the named respondents are the State of Washington and the Department of Licensing. [Dkt. # 52 Ex. F]. Privity for purposes of collateral estoppel means privity "as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming the same title. It denotes mutual or successive relationship to the same right or property." *Pahl v. Hughes-Northwest, Inc.*, 107 Wn. App. 763, 775, 27 P.3d 1233, 1238-39 (Wash. Ct. App. 2001) (quoting *United States v. Deaconess Med. Center*, 140 Wn.2d 104, 111, 994 P.2d 830 (2000)). Trooper Hedstrom and the State of Washington did *not* have a mutual relationship to the same right with reference to the subject matter of the DOL proceeding. The State of Washington's stake in such proceedings is to

keep dangerous drivers off the road. Trooper Hedstrom's stake in this litigation is to justify her actions and forestall liability from civil suit. These are different interests, and at no time were they mutual. Trooper Hedstrom had no notice, was not a party, and had no interest in the previous proceeding. [Dkt. # 49 Hedstrom Dep. Attach. 1 at 7]. Therefore, Mr. Deskins has failed to establish that Trooper Hedstrom was a party or in privity with a party to the previous litigation.

**4.    Applying Collateral Estoppel Would Work an Injustice.**

Trooper Hedstrom asserts that applying the doctrine of collateral estoppel against her would work an injustice. In determining whether applying collateral estoppel will work an injustice, one factor the Washington Supreme Court has considered is whether "the party against whom the estoppel is asserted [had] interests at stake that would call for a full litigational effort." *Hadley v. Maxwell*, 144 Wn.2d 306, 312, 27 P.3d 600, 602-03 (2001). In *Hadley*, the court declined to apply collateral estoppel against a motorist who paid a fine for a traffic violation and subsequently became a defendant in a personal injury action. *Id.* The court noted that applying the doctrine would encourage vigorous defenses of traffic violation cases, clogging the traffic court system. *Id.*

The State of Washington might fail to vigorously litigate license suspension or revocation proceedings for reasons of expediency—but might change that tactic if it believed the liability of its officers in civil suit was thereby affected. As in *Hadley*, applying collateral estoppel against officers later sued in civil rights actions would encourage the state to vigorously litigate DOL proceedings, thereby clogging the administrative system.

Most importantly, Trooper Hedstrom had no notice of the DOL proceeding, and therefore did not have a full and fair opportunity to litigate the issue—the primary factor courts focus on in determining whether applying collateral estoppel works an injustice. *See Nielson v. Spanaway Gen. Med. Clinic*, 135 Wn.2d 255, 265, 956 P.2d 312 (1998). Mr. Deskins has failed to prove that applying the doctrine against Trooper Hedstrom in this action would not work an injustice.

Mr. Deskins has failed to establish three of the four prongs needed to establish collateral estoppel. Therefore, the doctrine does not apply against Trooper Hedstrom and Plaintiff's motion for partial summary judgment based on collateral estoppel [Dkt # 43] is DENIED.

**B.      Plaintiff's Other Motions for Partial Summary Judgment**

Mr. Deskins's remaining claims are his excessive force and state law battery claims against Officer Mayfield.  He seeks summary judgment on these issues.  [Dkt. # 40].

Officer Mayfield alleges that Mr. Deskins suddenly turned as he opened his jacket, and that Officer Mayfield tased him in response to this motion.  A rational trier of fact could find that Officer Mayfield reasonably believed that Mr. Deskins was reaching for a weapon and that therefore the force used was not excessive.   Whether Mr. Deskins actually turned or not is a disputed material fact. Therefore, Mr. Deskins's motion for summary judgment on his excessive force and state law battery claims against Officer Mayfield must be DENIED.

**CONCLUSION**

For the foregoing reasons, Officer Hedstrom's Motion for Summary Judgment [Dkt. # 33] is GRANTED, Officer Bates's Motion for Summary Judgment [Dkt. # 34] is GRANTED, Officer Mayfield's Motion for Summary Judgment [Dkt. # 34] is GRANTED IN PART and DENIED IN PART, and Mr. Deskins's motions for partial summary judgment [Dkt. # 38, 40, 43] are DENIED.  City of

*//*

*//*

*//*

*//*

Bremerton's Motion for Summary Judgment [Dkt. # 34] is GRANTED, and Plaintiff's claims against the City are DISMISSED.

Dated this 1st day of May, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE